UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CHARLOTTE MUHA, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>JP MORGAN CHASE BANK NA and TRANS UNION LLC,<br><br>   Defendants. | Case No.: 20-cv-591<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*. (the "ECOA"), the Wisconsin Consumer Act, Chapters 421-427, Wis. Stats. (the "WCA"), and the common law of tort.

## JURISDICTION AND VENUE

2. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. §§ 1681n, 1681o, and 1691e, 12 C.F.R. § 1002.16, and 28 U.S.C. §§ 1331, 1337, and 1367.

3. Venue in this District is proper in that Defendant directed its conduct into the District.

## PARTIES

4. Plaintiff Charlotte Muha is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff is an "applicant" as defined in the ECOA, 15 U.S.C. §§ 1691a, and a "consumer" as defined in the FCRA, 15 U.S.C. § 1681a, in that Plaintiff is a natural person who applied to a creditor for an extension, renewal, or continuation of credit.

6. Defendant Chase Bank USA, N.A. ("Chase Bank") is a multinational investment bank and financial services company headquartered in the United States, and one of the largest banks in the world.

7. Chase Bank does substantial business in Wisconsin.

8. Chase Bank is a "creditor" as defined in the ECOA and the FCRA, 15 U.S.C. §§ 1691a and 1681a, in that Chase: (i) regularly extends, renews, or continues credit, (ii) regularly arranges for the extension, renewal, or continuation of credit, or (iii) regularly acts as an assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

9. Defendant Trans Union LLC ("TransUnion") is a consumer credit reporting agency and one of the three major nationwide credit bureaus.

10. TransUnion does substantial business in Wisconsin.

11. TransUnion is a "consumer reporting agency" as defined in the FCRA, 15 U.S.C. § 1681a(f), in that TransUnion regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

**FACTS**

12. Sometime prior to May 1, 2019, Plaintiff submitted an application to Chase Bank for a "CHASE FREEDOM Visa Platinum" credit account.

13. Upon information and belief, the Chase Freedom Visa Platinum credit account that Plaintiff applied for typically has a credit limit between $500.00 and $5,000.00. *See,* Chase Freedom Unlimited credit card "Pricing & Terms," (available online at: https://applynow.chase.com/FlexAppWeb/pricing.do?card=G39L&page_type=appterms) (accessed: January 13, 2020) ("Before we approve you for a credit card, we will review your credit report and the information you provide with your response to confirm that you meet the criteria for this offer. Based on this review, you may receive a Signature or Platinum card with different costs and/or benefits, or you may not receive a card. If approved for a signature account, your credit access line will be at least $5000. If approved for a Platinum account, your credit limit will be at least $500.").

14. On or about May 1, 2019, Chase Bank mailed Plaintiff a letter. A copy of this letter is attached to this complaint as Exhibit A.

15. Exhibit A states that Chase Bank did not approve Plaintiff's credit application for a CHASE FREEDOM Visa Platinum account.

> Reference Number: ████1149
>
> Update: We didn't approve your request
>
> Dear Charlotte V Muha:
>
> Thank you for applying for a new CHASE FREEDOM Visa Platinum account. We're sorry, but we did not approve your request.

16. Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit A is a form "Notice of Adverse Action" letter, used by Defendant as a notice to inform credit applicants that their requests for credit have been denied.

3

18. Exhibit A states that Chase Bank denied Plaintiff's application because Plaintiff's "credit report reflects a bankruptcy":

> Our decision was based on the following reason(s)
> Your credit report reflects a bankruptcy

19. Exhibit A states that Chase Bank's decision was based "in whole or in part on information obtained in a report from" TransUnion:

> We used information from your credit report
> Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. We've included the details about your right to know the information in your credit report at the end of this letter.
>
> TRANS UNION
> P O BOX 1000
> CHESTER, PA 19022-1000
> (800) 888-4213
> HTTP://WWW.TRANSUNION.COM/DIRECT

20. Upon information and belief, the reason that Chase Bank gave for denying Plaintiff's credit application — that Plaintiff's TransUnion "credit report reflects a bankruptcy" was a sham.

21. On or about May 7, 2019, TransUnion provided Plaintiff with a copy of her TransUnion credit report. A copy of Plaintiff's TransUnion credit report is attached to this complaint as Exhibit B.

22. Exhibit B does not reflect any bankruptcy.

23. Exhibit B states:



4

24. Exhibit B also states that "CHASE CARD" submitted an inquiry to TransUnion for Plaintiff's credit report on or about May 1, 2019:

| Inquiries | | | | | |
|---|---|---|---|---|---|
| Date | Name/Address | Code | MKT | Type Inq/Loan | Amount |
| 05/01/19 | CHASE CARD<br>PO BOX 15077<br>WILMINGTON, DE 19850<br>(800) 453-9719 | B US00006675 | NTL | I | |
| 12/29/17 | LANDMARK CU<br>2775 S MOORLAND RD<br>NEW BERLIN, WI 53151<br>(262) 796-4500 | Q MK04764051 | WIS | I | |
| 08/22/17 | WFFNATBANK<br>PO BOX 14517<br>DES MOINES, IA 50306<br>(800) 642-4720 | B DM08348446 | ILM | I | |

25. TransUnion's website links to a "TransUnion Credit Report User Guide." A copy of the TransUnion Credit Report User Guide is attached to this complaint as Exhibit C. *See, e.g.,* https://www.transunion.com/docs/rev/business/clientResources/HowToReadCreditReport.pdf (accessed: January 10, 2020).

26. The TransUnion Credit Report User Guide contains a "Sample credit report" that is "intended for educational purposes and cannot be used for actual testing."

27. The sample credit report shows that a consumer's bankruptcy would appear on a TransUnion credit report in the "Public Records" section:

```
PUBLIC   RECORDS
SOURCE       DATE      LIAB      ECOA           ASSETS     PAID    DOCKET#
TYPE                             COURT LOC                         ATTORNEY
Z 4932059    10/08R    $14668    C              $2668              08B38521
CHAPTER 7 BANKRUPTCY                                               D. WINSLOW

ZP5027011    1/08R     $3128     I                         6/08    08M987654
PAID CIVIL JUDGMENT                                                WILLIAMS
RETRO
```

Exhibit C.

28. <u>Exhibit B</u> states that Plaintiff has zero Public Records:

```
Credit Summary From 7/1/1974 To 5/7/2019
Public Records   0    Collections   0    Negative Trades  0
Hist Neg Trades  2    # Trades     17    Revolving       13
Hist Neg Occurr  2    Installment   4    Mortgage         0
Open Trades      0    Inquiries     3

Type            High        Limit       Balance     Past Due    Payment     %Avail
Revolving
Installment
Totals
```

29. In fact, Plaintiff filed a Chapter 7 bankruptcy in the bankruptcy court for the Eastern District of Wisconsin on November 5, 2004 and received a discharge on February 8, 2005. *See, In re. Charlotte V. Muha*, Ch. 7 Case No. 04-35897 (E.D. Wis.).

30. Pursuant to the FCRA, 15 U.S.C. § 1681c(a)(1), Chapter 7 bankruptcies only appear on a consumer's credit report for ten years from the date the bankruptcy was filed. 15 U.S.C. §§ 1681c(a)(1) (general rule).

31. Notwithstanding the general rule in 15 U.S.C. § 1681c(a)(1), a Chapter 7 bankruptcy may appear on a consumer's credit report after ten years in the case of any consumer credit report that is to be used in connection with a credit transaction which may reasonably be expected to involve a principal amount of $150,000.00 or more. 15 U.S.C. § 1681c(b)(1).

32. Upon information and belief, Chase Bank's assertion that Plaintiff's TransUnion credit report reflected a bankruptcy was false and misleading.

33. Upon information and belief, Chase Bank's assertion that the reason Chase Bank denied Plaintiff's credit application was that Plaintiff's "credit report reflects a bankruptcy" was a sham.

34. Alternatively, upon information and belief, when Chase Bank obtained Plaintiff's credit report from TransUnion, TransUnion and/or Chase Bank treated the TransUnion credit

6

Case 2:20-cv-00591-PP    Filed 04/10/20    Page 6 of 18    Document 1

report as though it were being used in connection with a credit transaction that could reasonably be expected to involve a principal amount of $150,000.00 or more.

35. Upon information and belief, Chase Bank did not adopt and maintain reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

36. Upon information and belief, TransUnion did not adopt and maintain reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

37. Upon information and belief, Chase Bank was aware that it had not adopted and was not maintaining reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

38. Upon information and belief, TransUnion was aware that it had not adopted and was not maintaining reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

39. Plaintiff was confused and misled by Exhibit A.

40. Plaintiff incurred harm as a result of Exhibit A, including time and expense attendant to obtaining a credit freeze from TransUnion and obtaining her TransUnion credit report, as well as anxiety, apprehension, and other emotional distress relating to learning that a

bankruptcy she filed fifteen years ago may still be appearing on her credit report and impacting her ability to obtain credit.

### *The ECOA*

41. The Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, "discourages discrimination and [] educates consumers as to the deficiencies in their credit status." *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 977 (7th Cir. 2004).

42. Congress authorized the Bureau of Consumer Financial Protection ("CFPB") to adopt rules and regulations to implement the ECOA. These regulations are found at 12 C.F.R. § 1002 ("Regulation B").

43. Pursuant to the ECOA and Regulation B, any creditor who fails to comply with any requirement imposed under the ECOA or Regulation B shall be liable to the aggrieved applicant for actual damages, punitive damages, and the costs of the action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1691e; 12 C.F.R. § 1002.16.

44. 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9 require that creditors furnish written notice of the actual and specific reasons why an adverse action was taken against a consumer credit applicant.

45. A creditor's denial of a credit application is an adverse action under the ECOA. 15 U.S.C. § 1691(d)(6).

46. A Notice of Adverse Action that provides a false reason for the adverse action is inherently inconsistent with the purposes and requirements of the ECOA. *See, e.g., Kimberton Chase Realty Corp. v. Main Line Bank*, No. 97-2767, 1997 U.S. Dist. LEXIS 17966, at *9 (E.D. Pa. Nov. 3, 1997).

8

Case 2:20-cv-00591-PP    Filed 04/10/20    Page 8 of 18    Document 1

### *The FCRA*

47. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, requires that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the FCRA. 15 U.S.C. § 1681(b).

48. 15 U.S.C. § 1681b limits the circumstances under which a consumer reporting agency may furnish a consumer report, including when a person "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."

49. 15 U.S.C. § 1681e(a) requires that every consumer reporting agency shall maintain reasonable procedures to avoid violations of section 1681c and to limit the furnishing of consumer reports to the purposes listed under section 1681b, and requires these procedures to require that prospective users of the consumer's information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

50. A creditor's request for, and a consumer reporting agency's disclosure of, information that is subject to time limitations in 15 U.S.C. § 1681c(a) outside of the scope of the exceptions in 15 U.S.C. § 1681c(b) is a request for, and disclosure of, a consumer's credit report without a permissible purpose. *See, e.g., Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp.2d 688, 690-91 (E.D. Pa. 2008); *Gables v. Sterling Infosystems, Inc.*, 234 F. Supp.3d 510, 520 (S.D.N.Y. 2017).

51. The FCRA also requires that any creditor who takes an adverse action on the basis of information contained in a consumer's credit report "shall" provide notice of the adverse action to consumer, and shall, upon the consumer's written request for the reasons for such adverse action disclose the nature of the information to the consumer. *See,* 15 U.S.C. § 1681m.

52. Pursuant to the FCRA, any person who fails to comply with any requirement imposed under the FCRA is liable to that consumer for actual damages and the costs of the action, together with a reasonable attorney's fee as determined by the court, and is further liable for punitive damages in the event that the noncompliance was willful. 15 U.S.C. §§ 1681n; 1681o.

### *The WCA*

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also*, Wis. Stat. § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions

under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See,* Wis. Stats. §§ 426.110(1), 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wisconsin law prohibits discrimination in the granting or extension of any form of loan or credit, and considers such discrimination *per se* unconscionable under the WCA.

Where a loan application is rejected and the reason for the rejection is not indicated in to the applicant in writing, there is a presumption of discrimination. Wis. Stat. §§ 138.20, 426.108; Wis. Admin. Code §§ DFI-SB 8.05, DFI-SL 8.05, DFI-WCA 1.85.

62. Wis. Admin. Code § 1.85(4) states:

Each merchant shall within a reasonable time after receiving a credit application notify the customer of the action taken on the application and shall upon request provide a customer whose application has been denied with the reasons for such a denial, including the fact that information supplied by the customer cannot be verified if that is the case. A record of all reasons for denial or a record of the denial form number and each alternative therein applies to the customer along with the credit application and all other related documentation shall be retained by the merchant in reasonable order accessible by reference to the name of the customer, for a period of 15 months from the date of notice of action on each credit application.

63. The WCA expressly authorizes individual actions by any customer affected by a violation of the WCA, any of the rules promulgated pursuant to the WCA, or the federal consumer credit protection act to bring a civil action on behalf of himself or herself and all persons similarly situated, for actual damages by reason of such conduct or violation. Wis. Stat. § 426.110(1).

### *Intentional or Negligent Misrepresentation*

64. The elements of the common law tort of intentional and negligent misrepresentation are that (1) a representation must be made of a fact and must be made by a defendant, (2) the representation must be untrue, and (3) the plaintiff must believe the representation to be true and rely thereon to his damage. *See, e.g.,* Harper and McNeely, "A Synthesis of the Law of Misrepresentation," 22 Minn. L.Rev. 939, 988 n.12 (1938).

### **COUNT I – FCRA**

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Count I is brought against both Defendants.

67. Plaintiff submitted a credit application to Chase Bank.

68. Chase Bank denied Plaintiff's credit application after obtaining Plaintiff's credit report from TransUnion.

69. The Notice of Adverse Action letter that Defendant provided to Plaintiff stated that the reason for the adverse action was that a bankruptcy appeared on Plaintiff's TransUnion credit report.

70. There was no bankruptcy eligible to be reported on Plaintiff's TransUnion credit report unless the report was to be used in connection with an extension of credit that could reasonably be expected to exceed $150,000.00 in principal.

71. When Chase Bank obtained Plaintiff's credit report from TransUnion, TransUnion and/or Chase Bank treated the TransUnion credit report as though it were being used in connection with a credit transaction that could reasonably be expected to involve a principal amount of $150,000.00 or more.

72. Chase Bank did not adopt and maintain reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

73. TransUnion did not adopt and maintain reasonable procedures to ensure that the TransUnion credit report furnished in connection with Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

74. Plaintiff suffered damages as a result of Defendants' failure to maintain reasonable procedures to ensure that the TransUnion credit report furnished in connection with

Chase Bank's request for Plaintiff's information would be subject to the time limits specified in 15 U.S.C. § 1681c(a).

75. Defendants violated 15 U.S.C. §§ 1681b, 1681c(a)(1), 1681e(a), 1681n, and 1681o.

## COUNT II – ECOA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Count II is brought against Chase Bank and in the alternative to Count I.

78. Plaintiff submitted a credit application to Defendant.

79. Defendant denied Plaintiff's credit application.

80. The Notice of Adverse Action letter that Defendant provided to Plaintiff stated that the reason for the adverse action was that a bankruptcy appeared on Plaintiff's Trans Union credit report.

81. Plaintiff believed and relied on Defendant's Notice of Adverse Action letter.

82. There was no bankruptcy eligible to be reported on Plaintiff's Trans Union credit report.

83. There was no bankruptcy on Plaintiff's Trans Union credit report.

84. Plaintiff suffered damages as a result of Defendant's failure to provide a truthful notice of adverse action.

85. Defendant violated 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9.

## COUNT III – WCA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Count III is brought against Chase Bank and in the alternative to Count I.

88. Plaintiff submitted a credit application to Defendant.

89. Defendant denied Plaintiff's credit application.

90. The Notice of Adverse Action letter that Defendant provided to Plaintiff stated that the reason for the adverse action was that a bankruptcy appeared on Plaintiff's Trans Union credit report.

91. Plaintiff believed and relied on Defendant's Notice of Adverse Action letter.

92. There was no bankruptcy eligible to be reported on Plaintiff's Trans Union credit report.

93. There was no bankruptcy on Plaintiff's TransUnion credit report.

94. The failure to provide a truthful Notice of Adverse Action raises a presumption of discrimination under Wisconsin law.

95. Plaintiff suffered damages as a result of Defendant's failure to provide a truthful notice of adverse action.

96. Defendant violated 15 U.S.C. §§ 1681m and 1691(d), 12 C.F.R. § 1002.9, Wis. Stat. §§ 138.20, 426.108, and Wis. Admin. Code §§ DFI-SB 8.05, DFI-SL 8.05, DFI-WCA 1.85.

97. Plaintiff brings this action to enforce the ECOA, FCRA, and WCA pursuant to Wis. Stat. §§ 426.110(1), 426.110(2), and 426.110(3).

### COUNT IV – Misrepresentation

98. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. Count IV is brought against Chase Bank and in the alternative to Count I.

100. Plaintiff submitted a credit application to Defendant.

101. Defendant denied Plaintiff's credit application.

102. The Notice of Adverse Action letter that Defendant provided to Plaintiff stated that the reason for the adverse action was that a bankruptcy appeared on Plaintiff's Trans Union credit report.

103. Plaintiff believed and relied on Defendant's Notice of Adverse Action letter.

104. There was no bankruptcy eligible to be reported on Plaintiff's Trans Union credit report.

105. There was no bankruptcy on Plaintiff's Trans Union credit report.

106. Plaintiff suffered damages as a result of Defendant's failure to provide a truthful notice of adverse action.

## CLASS ALLEGATIONS

107. Plaintiff brings this action on behalf two classes.

108. Class I ("False Credit Report Class") consists of:

> (a) all natural persons in the United States of America, (b) about whom Chase Bank requested a credit report from TransUnion, (c) in connection with an application for credit to or an offer of credit from Chase Bank, (d) where the TransUnion credit report disclosed the existence of a bankruptcy that was more than ten years old or the existence of other adverse information that was more than seven years old, and (e) the extension of credit could not reasonably be expected to exceed $150,000.00 in principal.

109. Class II ("False Notice of Adverse Action Letter Class") consists of:

> (a) all natural persons in the United States of America, (b) who submitted a credit application to Chase Bank, (c) and received a Notice of Adverse Action letter stating that the reason for denial was that the consumer's credit report reflected a bankruptcy, where (d) this was not, in fact, the reason that the consumer was denied credit.

110. Plaintiff also brings this action on behalf of a Wisconsin subclass that consists of all members of Class I that are natural persons in the State of Wisconsin.

111. Plaintiff also brings this action on behalf of a Wisconsin subclass that consists of all members of Class II that are natural persons in the State of Wisconsin.

112. The "Class Period" for each Class and Subclass dates back to the longest applicable statute of limitations for any claims asserted on behalf of the Class or Subclass from the date this action was commenced and continues through the date this action was commenced.

113. Each Class and Subclass is so numerous that joinder is impracticable.

114. Upon information and belief, there are more than 50 members of each Class and Subclass.

115. There are questions of law and fact common to the members of each Class and Subclass, which common questions predominate over any questions that affect only individual class members.

116. The predominant common questions are whether Defendant complied with state and federal law.

117. Plaintiff's claims are typical of the claims of the Class and Subclass members. All are based on the same factual and legal theories.

118. Plaintiff will fairly and adequately represent the interests of the Class and Subclass members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

119. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

120. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: April 10, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Jesse Fruchter
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com